NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| PROFESSIONAL ORTHOPEDIC ASSOCIATES, PA, et al., | : : : | |
| Plaintiffs, | : : | Civil Action No. 14-6950 (FLW)(DEA) |
| v. | : : | **OPINION** |
| EXCELLUS BLUE CROSS BLUE SHIELD, et al., | : : : | |
| Defendants. | : : : | |

WOLFSON, District Judge.

This case arises out of a dispute between Plaintiffs Jason Cohen, M.D., FA.C.S. ("Dr. Cohen"), and his medical practice Professional Orthopedic Associates, PA ("POA," together, with Dr. Cohen, the "Provider Plaintiffs") and Defendants Wegmans Food Markets, Inc. ("Wegmans") and Excellus Blue Cross Blue Shield ("Excellus," together, with Wegmans, the "Defendants"), for alleged underpayment of claims for medical services rendered by the Provider Plaintiffs to CE, who is alleged to be an employee of Wegmans and a beneficiary of a health insurance plan administered by Excellus and/or Wegmans.  Plaintiffs contend that CE executed an assignment of benefits that confers beneficiary status on the Provider Plaintiffs under ERISA. The Complaint asserts three claims:  (1) violation of § 502(a)(1)(B) of ERISA for failing to properly pay billed charges for the services purportedly rendered to CE; (2) violation of § 502(c)(1)(B) of ERISA for failing to provide to the Provider Plaintiffs certain documents; and (3) a claim for attorney's fees.  Excellus and Wegmans move separately to dismiss all counts in the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  Plaintiffs oppose these motions. Based on the reasons that follow, the Court concludes that the Provider Plaintiffs

do not have standing to bring the claims in this case and, as such, all of the claims against Defendants brought by the Provider Plaintiffs are dismissed; with respect to the claims brought by CE, Count II is likewise dismissed as to all Defendants; and finally, Wegmans is dismissed as a defendant.

I.   **Background**[1]

Plaintiff Dr. Cohen is a board certified orthopedic surgeon licensed to practice in New Jersey. Compl. ¶ 2. Dr. Cohen is shareholder/owner of POA, a professional medical association with offices in Tinton Falls, Toms River and Freehold, New Jersey. *Id.* at ¶ 1-2. In June 2013, Dr. Cohen performed medically necessary surgery and other medical procedures on CE. *See id.* at ¶¶ 33, 37.

CE is alleged to be an employee of Wegmans and a "member of, beneficiary of, participant in, and/or insured by a health insurance policy,"[2] i.e., the Wegmans Food Markets, Inc. Employee Welfare Benefit Plan ("the Plan").[3] More specifically, CE was insured through the Preferred Provider Organization Health Care Plan for Full-Time Employees (the "PPO Program"), which is a component program of the Plan. *See* Lyons Aff. ¶¶ 4-5.

Dr. Cohen and POA are "'out-of-network providers' or 'non-participating providers'" with respect to the PPO Program because the Provider Plaintiffs "have not entered into contracts with Excellus." *Id.* at ¶ 10; *see also id.* at ¶ 34 ("POA and Dr. Cohen are non-participating

---

[1] The following allegations are taken from the Complaint and assumed as true in deciding these Motions. *See Newman v. Beard*, 617 F.3d 775, 779 (3d Cir. 2010) ("We accept all factual allegations as true, construe the amended complaint in the light most favorable to [the plaintiff], and determine whether, under any reasonable reading of the…complaint, he may be entitled to relief.").

[2] While the Complaint alleges that CE is the employee and participant of the Plan, Wegmans has supplied an affidavit indicating that CE is a dependent of a participant in the Plan. Such distinctions are not relevant for the purposes of these Motions.

[3] Defendant Wegmans has submitted the Affidavit of Rebecca Lyons ("Lyons Aff."), which authenticates comprising the Plan. Because Plaintiffs have referenced and relied upon the Plan and these documents in their Complaint, these documents are properly considered by the Court when deciding these Motions. *See, e.g.*, *Angstadt v. Midd–West Sch. Dist.*, 377 F.3d 338, 342 (3d Cir. 2004) (explaining that a district court may appropriately consider "a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment").

providers of services in that they did not have a contract with Excellus to accept agreed upon rates for services provided to the Patient CE on June 1, 2013.").  When providing services as an out-of-network provider, the Provider Plaintiffs require all patients to sign documents whereby the patient agrees to be personally liable for all medical charges. *See id.* at ¶ 16.  The Provider Plaintiffs allege that they obtain from each patient an Authorization of Designated Representative ("DAR") and an Assignment of Benefits with Rights ("AOB"), which allegedly make POA a beneficiary under the Plan.  *Id.*  POA does not waive any deductible or co-payment by accepting the AOB and DAR.  *Id.* at ¶ 17.  Patient CE is alleged to have signed the DAR on December 19, 2012.  *Id.* at ¶ 18.

   After performing CE's surgery and other medical procedures, the Provider Plaintiffs submitted a claim to Excellus, seeking payments totally $550,971.00 for "'out of network' medical services" that they provided to CE.  *See id.* at ¶¶ 35, 39.  According to the Complaint, Excellus approved portions of the claims submitted by the Provider Plaintiffs, and eventually authorized $20,024.43 in payments to CE, who later forwarded said payments to the Provider Plaintiffs.  *See id.* at ¶¶ 40-48.

   On September 25, 2013, pursuant to the terms of the Plan, the Provider Plaintiffs filed a First Level Member Appeal with Excellus, alleging that Excellus's payments were far below the usual and customary rates charged by a surgeon in the relevant geographic area.  *Id.* at ¶ 49-50.  The Provider Plaintiffs also requested the documentation that Excellus relied upon in making the compensation decision.  *Id.* at ¶ 50.  On or about November 6, 2013, Excellus denied the First Level Member Appeal, stating that the claim was processed correctly.  This denial letter allegedly did not address the request for documentation.  *See id.* at ¶ 51.

The Provider Plaintiffs then filed a Second Level Member Appeal on or about December 17, 2013.  They filed this appeal on the BlueCard Claims Appeal Form, allegedly at the direction of the Appeals Arbitrator.  *Id.* at ¶ 52.  Because the Provider Plaintiffs allegedly never received a response to this appeal, they filed another appeal entitled "Second Level Member Appeal" on March 18, 2014.  *Id.* at ¶ 53.  On July 30, 2014, this appeal was denied for failure to file the appeal in a timely manner.  *Id.* at ¶ 54.

Plaintiffs allege that they have exhausted their administrative remedies and filed the instant action seeking to recover the outstanding balance from Defendants for CE's surgery.  After the denial of the final appeal, Plaintiffs initiated this action in November 2014.  As mentioned, the Complaint asserts three claims:  (1) violation of § 502(a)(1)(B) of ERISA for failing to appropriately pay billed charges for the services purportedly rendered to CE; (2) violation of § 502(c)(1)(B) of ERISA for failing to provide to the Provider Plaintiffs certain documents; and (3) a claim for attorney's fees.  Defendant Wegmans moves to dismiss the Complaint in its entirety, arguing that Plaintiffs lack standing to bring any of their purported claims or, alternatively, that Wegmans is not a proper defendant.  Similarly, Defendant Excellus moves to dismiss the Complaint in its entirety, arguing that the Complaint fails to establish that Plaintiffs have proper standing to bring the Complaint and/or that it fails to properly allege a violation of ERISA.

## II.    **Standard of Review**

### A.    **Rule 12(b)(6) Standard**

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a claim "for failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  When reviewing a motion to dismiss, courts must first separate the factual and legal elements of the

4

claims, and accept all of the well-pleaded facts as true.  *See Fowler v. UPMC Shadyside*, 578

F.3d 203, 210-11 (3d Cir. 2009).  All reasonable inferences must be made in the plaintiff's favor.

*See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010).  In order to survive a

motion to dismiss, the plaintiff must provide "enough facts to state a claim to relief that is

plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  This standard

requires the plaintiff to show "more than a sheer possibility that a defendant has acted

unlawfully," but does not create as high of a standard as to be a "probability requirement."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

      The Third Circuit has required a three-step analysis to meet the plausibility standard

mandated by *Twombly* and *Iqbal*.  First, the court should "outline the elements a plaintiff must

plead to a state a claim for relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).  Next, the

court should "peel away" legal conclusions that are not entitled to the assumption of truth.  *Id.*;

*see also Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a

complaint, they must be supported by factual allegations.").  It is well-established that a proper

complaint "requires more than labels and conclusions, and a formulaic recitation of the elements

of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations and citations

omitted).  Finally, the court should assume the veracity of all well-pled factual allegations, and

then "determine whether they plausibly give rise to an entitlement to relief." *Bistrian*, 696 F.3d

at 365 (quoting *Iqbal*, 556 U.S. at 679).  A claim is facially plausible when there is sufficient

factual content to draw a "reasonable inference that the defendant is liable for the misconduct

alleged." *Iqbal*, 556 U.S. at 678.  The third step of the analysis is "a context-specific task that

requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Generally, when determining a motion under Rule 12(b)(6), the court may only consider the complaint and its attached exhibits.  However, while "a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." *Angstadt v. Midd-West Sch. Dist.*, 377 F.3d 338, 342 (3d Cir. 2004) (quoting *U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002)); *see also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

**B.**     **Rule 12(b)(1) Standard**

Under Federal Rule of Civil Procedure 12(b)(1), a court must grant a motion to dismiss if it lacks subject matter jurisdiction to hear a claim.  *See* Fed. R. Civ. P. 12(b)(1).  "A motion to dismiss for want of standing is also properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter." *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007) (citing *St. Thomas-St. John Hotel & Tourism Ass'n v. Gov't of the U.S. Virgin Islands*, 218 F.3d 232, 240 (3d Cir. 2000) ("The issue of standing is jurisdictional.")).  The plaintiff must establish the elements of standing, "and 'each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation.'" *Id.* (quoting *FOCUS v. Allegheny Cnty. Court of Common Pleas*, 75 F.3d 834, 838 (3d Cir. 1996)).

In evaluating a Rule 12(b)(1) motion to dismiss, the court must determine whether the motion attacks the complaint as deficient on its face or whether the motion attacks the existence of subject matter jurisdiction in fact, apart from any pleadings, because that distinction determines how the pleadings must be reviewed.  *See Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).  When reviewing a facial challenge to standing, which

contests the sufficiency of the pleadings to establish standing, "the court must only consider the allegations of the complaint and the documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000). "A factual attack, on the other hand, is an argument that there is no subject matter because the facts of the case—and here, the [d]istrict [c]ourt may look beyond the pleadings to ascertain the facts—do not support the asserted jurisdiction." *Constitution Party v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014). The "trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case" and "the plaintiff will have the burden of proof that jurisdiction does in fact exist." *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 n.3 (3d Cir. 2006) (quoting *Mortensen*, 549 F.2d at 891).

"In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Storino v. Borough of Point Pleasant Beach*, 322 F.3d 293, 296 (3d Cir. 2003) (quoting *Warth v. Seldin*, 422 U.S. 490, 498, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975)). "It is axiomatic that, in addition to those requirements imposed by statute, plaintiffs must also satisfy Article III of the Constitution." *Horvath v. Keystone Health Plan East, Inc.*, 333 F.3d 450, 455 (3d Cir. 2003) (citation omitted). "[T]he standing question is whether the plaintiff has 'alleged such a personal stake in the outcome of the controversy' as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf." *In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 244 (3d Cir. 2012) (quoting *Warth*, 422 U.S. at 498). As articulated by the Third Circuit, the requirements of Article III standing are as follows:

(1) the plaintiff must have suffered an injury in fact - an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) there must be a causal connection between the injury and the conduct complained of - the injury has to be fairly

7

traceable to the challenged action of the defendant and not the result of the independent action of some third party not before the court; and (3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Storino*, 322 F.3d at 296 (quoting *Society Hill Towers Owners' Ass'n v. Rendell*, 210 F.3d 168, 175-176 (3d Cir. 2000)).

## III.   <u>Discussion</u>

In moving to dismiss Plaintiffs' Complaint, Defendants make the following arguments: (1) the Provider Plaintiffs lack standing to pursue a claim for benefits on behalf of CE; (2) the Complaint fails to establish that CE has constitutional standing; (3) the Complaint fails to state a colorable claim against Wegmans because Wegmans was not the administrator or claims fiduciary under the Plan; and (4) the Complaint fails to properly allege an ERISA violation.  The Court will address each issue, in turn.

### A.   **Standing**

#### 1.   <u>Whether the Provider Plaintiffs have Statutory Standing</u>[4]

First, Defendants argue that the Provider Plaintiffs have no standing to sue for benefits relating to their treatment of CE because Plaintiff has failed to show that CE assigned his or her benefits to the Provider Plaintiffs.  Additionally, Defendants argue that the Provider Plaintiffs have no standing to sue for benefits relating to their treatment of CE because the Plan contains a valid and enforceable anti-assignment provision.  Plaintiffs do not dispute Defendants' interpretation of the anti-assignment provision,[5] but argue that the assignment is permitted under

---

[4] Because Defendants challenge whether the Provider Plaintiffs meet the statutory prerequisites to bring an ERISA claim, the Court analyzes the challenge under the standards applicable to Rule 12(b)(6).  *See Cohen v. Horizon Blue Cross Blue Shield of N.J.*, Civil Action No. 2:13-CV-03057 (JLL)(JAD), 2013 U.S. Dist. LEXIS 153438, at *15 n.2 (D.N.J. Oct. 25, 2013) (citing *Maio v. Aetna, Inc.*, 221 F.3d 472,482 n.7 (3d Cir. 2000).

[5] Plaintiffs also assert that the Plan itself expressly grants standing to the Provider Plaintiffs, pointing to two sections of the Plan's benefits claims procedures that refer to claimants as a participant, beneficiary, or "authorized representative" as evidence that the Plan grants standing to the Provider Plaintiffs.  *See* Lyons Aff. Ex. 1 at Ex. D

ERISA; specifically, Plaintiffs point to 29 C.F.R. 2560.503-1(b)(4), which states that claims procedures for a plan are reasonable only if "[t]he claims procedures do not preclude an authorized representative of a claimant from acting on behalf of such claimant in pursuant a benefit claim or appeal of an adverse benefit determination."

By its terms, ERISA's enforcement provision confers standing only to plan participants or beneficiaries.  *See* 29 U.S.C. § 1132(a)(1)(b) ("A civil action may be brought . . . by a participant or a beneficiary . . . to recover benefits due him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.").  Indeed, the Third Circuit recently adopted the majority position of almost every other circuit and held that "health care providers may obtain standing to sue [under § 502(a) of ERISA] by assignment from a plan participant."  *CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 176 n.10 (3d Cir. 2014).  But, these claims must be "properly assigned."  *Id.*

It is undisputed that CE is a beneficiary of the Plan.  Plaintiffs assert that the Provider Plaintiffs, as a result of the AOB and DAR signed by CE, stand in the shoes of CE and consequently may bring an ERISA action as a participant or beneficiary under § 502.  The Court, however, cannot conclusively determine the scope of the assignment in the AOB because the Complaint fails to include any of the specific language of the assignment, nor has either party attached this document to either of their respective submissions.

_____

(hereinafter the "Claims Procedure").  This section, however, merely permits an "authorized representative" to "assert a claim for benefits" in the administrative claims process.  *See id.* at 19.  It does not validate assignments, and does not grant standing to medical providers to sue for additional payments for medical services they provided to participants and beneficiaries under the Plan.  Indeed, by its very terms, the Claims Procedure pertains to the administrative claims review process; such provisions clearly do not address or relate to the assignment of rights in the context of a civil lawsuit, nor do they confer standing to bring a civil action.  *See, e.g., Menkowitz v. Blue Cross Blue Shield of Ill.*, Civ. No. 14-2946, 2014 U.S. Dist. LEXIS 151232, at *7 n.5 (D.N.J. Oct. 23, 2014) (finding the plaintiffs' argument that the mention of "claimants" and "claimant's representatives" in a plan's summary plan description evidenced that the plan permitted representation by a medical provider to pursue ERISA benefits to be unavailing); *Torpey v. Blue Cross Blue Shield of Tex.*, Civil Action No. 12-cv-7618, 2014 U.S. Dist. LEXIS 11412, at *11 (D.N.J. Jan. 30, 2014) (explaining that the designation of an "authorized representative" in the context of a similar plan "does not confer standing to bring a civil action").

As the proponent of the ERISA claims, the Provider Plaintiffs have the burden of establishing they have standing to sue.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *Warth*, 422 U.S. at 508.  The Complaint merely pleads the most conclusory allegations that the Provider Plaintiffs obtained beneficiary status from the AOB, which they required all patients to sign.  There are, however, no factual allegations that illuminate the extent or boundaries of this purported assignment.  In fact, there are no allegations that CE signed the AOB.  Without such allegations, the Complaint fails to plausibly establish that CE assigned his or her rights to assert a claim for benefits to the Provider Plaintiffs under ERISA.  *See Franco v. Conn. Gen. Life Ins. Co.*, 818 F. Supp. 2d 792, 810 (D.N.J. 2011) (finding that simply asserting that the providers has been assigned plan benefits by their patients was insufficient to plausibly establish standing in an ERISA litigation).

While the Complaint does allege that CE signed the DAR, the authority granted under the DAR is limited; according to the Complaint, it authorizes the Provider Plaintiffs "to appeal to [CE's] insurance company, [Excellus], on [CE's] behalf, in the determination of services rendered by Dr. Cohen . . . ."  Compl. ¶ 19.  There are no allegations that the parties intended the DAR to effect an assignment of any additional rights or benefits under the Plan, including the initiation of a lawsuit for benefits, nor does the narrow language allow for any such inference.

In cases where derivative standing is predicated upon an assignment of benefits under an ERISA plan, "failure to establish that an appropriate assignment exists is fatal to . . . standing." *Cmty. Med. Ctr. v. Local 464A UFCW Welfare Reimbursement Plan*, 143 F. App'x 433, 436 (3d Cir. 2005); *see also Specialty Surgery of Middletown v. Aetna*, Civil Action No.: 12-4429 (JLL), 2014 U.S. Dist. LEXIS 85371, at *9 (D.N.J. June 24, 2014) ("In the absence of any evidence tending to show the existence of a valid assignment, the Court is compelled to dismiss the claims

relating to [the patients] for lack of standing.").   While the Provider Plaintiffs may allege that they are beneficiaries under the Plan, they have failed "to plead facts (for example, actual assignment language) to support their legal conclusion that a valid assignment of the proper breadth was given by" CE, a beneficiary under the Plan.  *Franco*, 818 F. Supp. 2d at 811.  Even if the Court assumes that an assignment exists on the basis of Plaintiffs' conclusory allegations, it remains unknown the terms and parameters of such an assignment in order for the Court to determine that the Provider Plaintiffs have proper standing to sue under ERISA.  *See id.* (holding that provider lacked standing to sue under § 502 where the court had "no way of knowing . . . [the] terms or parameters [of the assignment]").   In order to establish the existence of a valid assignment sufficient to confer standing under ERISA, a plaintiff must plausibly plead such an assignment in the Complaint.  Here, Plaintiffs have failed to plead the benefits that the AOB conferred upon the Provider Plaintiffs.  Consequently, Plaintiffs have not established the existence of "properly assigned claims" to satisfy their burden of showing that the Provider Plaintiffs have standing to sue under ERISA.

There is, however, a more fundamental flaw to the Provider Plaintiffs' purported standing.  Even if there was a valid assignment on which the Provider Plaintiffs could plausibly premise their standing claim, the Plan contains an express anti-assignment clause.  This Court has been confronted with the identical issue numerous times, including in a case involving the Provider Plaintiffs in 2011.  As this Court explained then:

> Although the Third Circuit has not addressed the issue of anti-assignability clauses, a number of federal and state courts have found that unambiguous anti-assignment provisions in group health care plans are valid. *See, e.g.*, *Physicians Multispecialty Group v. Health Care Plan of Horton Homes, Inc.*, 371 F.3d 1291, 1294-96 (11th Cir. 2004) ("Because ERISA-governed plans are contracts, the parties are free to bargain for certain provisions in the plan—like assignability. Thus, an unambiguous anti-assignment provision in an ERISA-governed welfare benefit plan is valid and enforceable."); *City of Hope Nat'l*

> *Med. Ctr. v. Healthplus, Inc.*, 156 F.3d 223, 229 (1st Cir. 1998) ("Consistent with the other circuits which have addressed this issue, we hold that ERISA leaves the assignability or non-assignability of health care benefits under ERISA-regulated welfare plans to the negotiations of the contracting parties."); *St. Francis Reg'l Med. Ctr. v. Blue Cross & Blue Shield of Kan., Inc.*, 49 F.3d 1460, 1464-65 (10th Cir. 1995) ("ERISA's silence on the issue of the assignability of insurance benefits leaves the matter to the agreement of the contracting parties."); *Davidowitz v. Delta Dental Plan of Cal., Inc.*, 946 F.2d 1476, 1478 (9th Cir. 1991) ("As a general rule of law, where the parties' intent is clear, courts will enforce non-assignment provisions."); *Washington Hosp. Ctr. Corp. v. Group Hospitalization and Med. Servs., Inc.*, 758 F. Supp. 750, 755 (D.D.C. 1991) (holding that an anti-assignment provision was valid and enforceable after concluding that enforcement of the provision was not contrary to public policy); *Renfrew Ctr. v. Blue Cross & Blue Shield*, 1997 U.S. Dist. LEXIS 5088, 1997 WL 204309, *3 (N.D.N.Y. 1997) ("anti-assignment clauses play an important role in constraining the costs of health care"); *Somerset Orthopedic Assocs. v. Horizon Blue Cross and Blue Cross and Blue Shield of New Jersey*, 345 N.J. Super. 410, 785 A.2d 457, 465 (N.J. App. Div. 2001) (finding that "such subscriber assignment are void as contrary to public policy" and holding that "the anti-assignment clause in Horizon's subscriber contracts is valid and enforceable to prevent assignment by subscribers of policy benefit payments to non-participating medical providers without Horizon's consent"). This Court finds the caselaw supporting the enforceability of anti-assignment provisions in health benefit plans persuasive.

*Cohen v. Independence Blue Cross*, 820 F. Supp. 2d 594, 605 (D.N.J. 2011) (quoting *Briglia v. Horizon Healthcare Servs.*, Civil Action No. 03-6033 (FLW), 2005 U.S. Dist. LEXIS 18708, at *12-14 (D.N.J. May 13, 2005)).

Since then, the Third Circuit has not confronted the issue; however, courts in this District have followed this reasoning that an unambiguous anti-assignment provision in a plan is valid and enforceable.  *See, e.g.*, *Menkowitz*, 2014 U.S. Dist. LEXIS 151232, at *7-8, *Specialty Surgery of Middletown v. Aetna*, Civil Action No.: 12-4429 (JLL), 2014 U.S. Dist. LEXIS 85371, at *10-11 (D.N.J. June 24, 2014); *Neurological Surgery Assoc. P.A. v. Aetna Life Ins. Co.*, Civil Action No. 12-5600 (SRC), 2014 U.S. Dist. LEXIS 75906, at *7-9 (D.N.J. June 4, 2014); *Torpey*, 2014 U.S. Dist. LEXIS 11412, at *8-9; *North Jersey Brain & Spine Ctr. v. St. Peter's Univ. Hosp.*, Civil Action No. 13-74 (ES), 2013 U.S. Dist. LEXIS 138040, at *15-17

(D.N.J. Sept. 25, 2013).   Plaintiffs have offered no reason for this Court to break from these

cases, or its own precedent.

In this case, the anti-assignment clause provides:

**Antiassignment Provision**

Except for voluntary assignments to health care provides as may be required
by law or as may be provided in applicable policies, your right to receive
benefits under any of the plans covered by this summary may not be assigned,
voluntarily or involuntarily, to any other person.

*See* Lyons Aff. Ex. 3 at 5.  This provision is unambiguous and express, and there is no allegation

or argument offered by Plaintiffs that the provision should be found void or unenforceable.

Plaintiffs have cited to a number of cases in support of their standing claim; however, these cases

are easily distinguishable from this case, as they involve scenarios where there was no anti-

assignment provision or where the provision had been waived.  Here, Plaintiffs have not alleged

that CE obtained advanced written consent for the assignment given to the Provider Plaintiffs or

that the anti-assignment provision had been waived by Defendants.  Further, Plaintiffs' reliance

on 29 C.F.R. 2560.503-1(b)(4) is misplaced, as the "provision applies to internal submission of

claims and appeals on behalf of beneficiaries, not civil lawsuits in federal court."  *Menkowitz*,

2014 U.S. Dist. LEXIS 151232, at *8.  Any assignment of rights and benefits under the Plan is

precluded by the unambiguous anti-assignment clause; accordingly, any purported assignment is

invalid.  As such, the Provider Plaintiffs are not beneficiaries under the Plan, and lack standing to

bring their claims.  Their claims are dismissed.

2.      Whether CE Has Article III Standing

Wegmans argues that CE lacks Article III standing to bring this suit because she has not

suffered any injury-in-fact because there are no allegations that the Provider Plaintiffs denied her

any medical treatment or services or required her to make any out-of-pocket payments for any treatment. It appears that Wegmans maintains that CE would only have sufficient injury to bring a cause of action if the Provider Plaintiffs attempted to collect the unpaid amounts they claim they are owed for services rendered to CE, or if CE had already paid out-of-pocket for the treatments she received.

Contrary to Wegmans' assertions, the allegations within the Complaint create more than a "conjectural or hypothetical" interest. *See Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 188 (3d Cir. 2006) (explaining that an injury-in-fact must be "actual or imminent, not conjectural or hypothetical"). Rather, drawing all inferences in favor of CE, as is required under Rule 12(b)(1), it appears that CE is personally responsible to the Provider Plaintiffs for any medical charges that are unpaid by Defendants. *See* Compl. ¶¶ 16-17. There are no allegations that the Provider Plaintiffs have forgiven or will forgive the outstanding medical charges owed to them by CE. While Wegmans has emphasized that there are no allegations that CE actually paid any portion of the billed charges, this argument applies solely to the issue of remedy; it does not impact the question of whether CE's legal interests have been violated by the conduct of the Defendants. The clear inference from the Complaint is that CE remains indebted to the Provider Plaintiffs for a greater amount than she would have been had Defendants properly paid the asserted benefits. Such allegations are sufficient to create an injury-in-fact, and accordingly establish Article III standing. *See Prof'l Orthopedic Assocs., PA v. CareFirst BlueCross BlueShield*, Civil Action No. 14-4486 (MAS) (DEA), 2015 U.S. Dist. LEXIS 84996, at *11 (D.N.J. June 30, 2015) ("[T]he allegations that Defendants have failed to pay benefits allegedly due to Patient GG and that Patient [GG] is personally liable to POA and Dr. Cohen for the medical expenses incurred are sufficient to establish the existence of Article III standing.");

14

*Menkowitz*, 2014 U.S. Dist. LEXIS 151232, at *9 (holding that the plaintiffs had sufficiently alleged an injury-in-fact to establish Article III standing where it could be inferred from the complaint that the patient was indebted to the medical provider for any unpaid medical charges); *Cohen*, 2013 U.S. Dist. LEXIS 153438, at *21 ("Horizon's failure to pay the benefits allegedly due to Patient F.L., and Patient F.L.'s consequent liability to Dr. Cohen constitute a particularized injury sufficient to confer Article III standing.") (citing *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990) ("A threatened injury must be certainly impending to constitute injury in fact.")).  Accordingly, CE's claims will not be dismissed for lack of standing.

Having determined that CE has sufficiently pled an injury-in-fact to establish standing, the Court proceeds to the merits of the claims asserted in the Complaint.

**B.      Wegmans as a Defendant**

Wegmans contends that it is not a proper defendant in this suit because it does not administer the Plan and, while it is named as a Plan administrator, it had delegated the responsibility for administering benefits to Excellus.  Plaintiffs point out that the Plan specifically names Wegmans as the Plan Administrator and as a fiduciary, and therefore Wegmans is an appropriate party to this suit.

ERISA § 502 authorizes suit against the plan and its administrators in their official capacities.  *Graden v. Conexant Sys. Inc.*, 496 F.3d 291, 301 (3d Cir. 2007).   The Third Circuit has explained that a proper defendant in a claim for wrongful denial of benefits under ERISA "is the plan itself or a person who controls the administration of benefits under the plan*." Evans v. Employee Benefit Plan*, 311 F. App'x 556, 558 (3d Cir. 2009) (citing 29 U.S.C. § 1132(a)(1)(B)).  The "defining feature of the proper defendant" for such a claim is whether the party "exercise[ed] control over the administration of benefits."  *Id.*

Plaintiffs point to sections of the Plan documents which identify Wegmans as the plan administrator and as the designated fiduciary under the Plan.  *See* Lyons Aff. Ex. 1 at 1, Ex. 2 at 81, Ex. 3 at 2.  Specifically, Plaintiffs emphasize that that Plan states that Wegmans "has full discretionary authority to administer the Plan, including and not limited to, full discretionary authority to interpret the Plan and to determine all questions relating to benefits offered under the Plan."  Lyons Aff. Ex. 3 at 4.  Such statements, Plaintiffs argue, show that Wegmans is a plan administrator and a proper defendant.

Wegmans, however, cites a provision in the Plain that specifically grants Wegmans the authority to "designate . . . one or more other persons, including an insurance company or a third party administrator, the authority to carry out some or all of its duties under the Plan or a constituent Program."  Lyons Aff. Ex. 1 at 1.  According to the Plan, if Wegmans chose to grant an insurance company such authority, "such party shall have full discretionary authority to interpret the Program and to determine all questions related to benefits offered under the Program."  *Id.*  The insurance company "who administers a Program shall be a fiduciary with respect to the determination of claims for benefits ("claims fiduciary" or "claims administrator") and shall have discretionary authority to determine all matters with respect to whether a claim qualifies for payment of benefits . . . ."  *Id.*  For further support, Wegmans also points to other Plan documents, which tend to establish that Excellus is the third-party administrator and claims fiduciary under the Plan.  Lyons Aff. Ex. 2 at 1, 5.  These documents make clear that Excellus reviews claims for benefits pursuant to the PPO Program of the Plan, makes benefits determinations, reviews appeals of those determinations, and makes the final determination concerning all claims and appeals.  *See id.* at 52-61.

At this stage, the Court's task is not to determine whether Wegmans is actually a Plan administrator or fiduciary. Rather, the Court must determine whether Plaintiffs have pled sufficient facts to support the plausible inference that Wegmans exercised control over the administration of benefits with regards to CE. Specifically, in order for Wegmans to be a proper Defendant, the Complaint must allege that Wegmans had "authority or responsibility for administering benefits under the Plan." *Evans*, 311 F. App'x at 558. As discussed, the Plan granted Wegmans the authority to delegate to insurance companies, such as Excellus, "the authority to administer" the Plan and to have "full discretionary authority to interpret the Program and to determine all questions relating to benefits under the Plan." Lyons Aff. Ex. 1 at 1. Such entities became claims fiduciaries with respect to the determination of claims for benefits, and have discretionary authority "to determine all matters with respect to whether a claim qualifies for payment of benefits." *Id.* In other words, these insurance companies would become the third-party administrator and claims fiduciary on behalf of Wegmans. Wegmans did just that in this case—assigning these administrative responsibilities to Excellus. The Summary Plan Description ("SPD") makes clear that Wegmans was not involved with the decision-making process as it relates to claims under the PPO Program; rather, it was Excellus that was given the authority and responsibility for making the claims decision that Plaintiffs challenge in this action. *See* id. at Ex. 2.

While it is true that Wegmans is nominally the Plan administrator, the Third Circuit has rejected ERISA claims against an employer in a similar situation. In *Evans*, the plaintiff had named the employer as a defendant because the plan at issue listed the employer as the plan administrator. The Third Circuit reasoned that, despite this express statement in the plan, the plaintiff had failed to establish that the employer had "any authority or responsibility for

administering benefits under the Plan," and that the "Plan's language makes it clear that [the insurer], not [the employer], has discretion to interpret the contract's terms." *Evans*, 311 F. App'x at 558-59. Despite the fact that the plan did not specifically give the insurer exclusive discretion to make benefit determinations, the Third Circuit found that the lack of evidence that the employer had any role in the plaintiff's benefits determination to be determinative. *Id.* at 559.

Likewise, here, despite the Plan expressly naming Wegmans as the Plan administrator, the Plan makes clear that Excellus is the third-party administrator and claims fiduciary in this case. There are no allegations in the Complaint that plausibly allow for an inference that Wegmans had responsibility for, or controlled, the benefits determination as it relates to CE's claims. In fact, the Complaint specifically details how the Provider Plaintiffs submitted the benefits claim and appeals directly to Excellus, and that Excellus made the very determinations that Plaintiffs seek to challenge in this action. *See* Compl. ¶¶ 39-54; *see also Evans*, 311 F. App'x at 559 (noting that the plaintiff directed all her communications when she was seeking benefits with the insurer, not with her employer). While the Complaint does state that "Defendants' fiduciary functions include, *inter alia*, . . . determinations as to claims for benefits, . . and coverage, handling, management, review, decision making and disposition of appeals and grievances under a plan," Compl. ¶ 24, there are no allegations that Wegmans itself engaged in any of these activities as it relates to CE's benefits claim. Rather, the Complaint specifically states that Excellus's fiduciary duties included providing health coverage and benefits to CE and making the benefits claim determination in this case. *See id.* at ¶ 25.

Overall, these allegations in the Complaint, when read together with the Plan documents, fail to establish that Wegmans exercised any discretion or control over the administration

benefits with regards to CE.  Therefore, Plaintiffs have failed to establish that Wegmans is a proper defendant with respect to Plaintiffs' ERISA claims; consequently, Wegmans is dismissed from this matter.  *Compare Mullica v. Minn. Life Ins. Co.*, Civil Action No. 11-4034, 2013 U.S. Dist. LEXIS 139160, at *19-21 (E.D. Pa. Sept. 26, 2013) (finding that an employer/plan administrator was not a proper defendant where the "allegations in the complaint, read together with the SPD provisions, fail to state sufficient facts to establish [the employer] exercised any discretion with respect to the administration of benefits under the SPD"), *and Murray v. Jeld-Wen Inc.*, 2013 U.S. Dist. LEXIS 3518 (M.D. Pa. Jan. 9, 2013) (entering judgment for employer/plan administrator where the plaintiff failed to produce evidence that created "legitimate question regarding whether [the employer] had some degree of control over the decision to deny [the plaintiff's] application for disability benefits" where another entity was identified "as the claims administrator under the Plan with discretionary authority to interpret the Plan and make claim determinations), *and Narducci v. Aegon United States, Inc.*, Civil Action No.10-CV-00955 (DMC)(JAD), 2010 U.S. Dist. LEXIS 134514, at *6-7 (D.N.J. Dec. 15, 2010) (dismissing nominal plan administrator where the plan specified that the claims administrator had discretionary authority to make benefit determinations because the plan administrator had "no role in determining benefits"), *with Franco*, 818 F. Supp. 2d at 818-19 (finding that the pleadings sufficiently established that an entity was a proper defendant where the plan delegated authority to determine entitlement to benefits to the entity and the complaint alleged that the entity made decisions regarding the payment of the plaintiff's claims).  However, if, during the course of discovery, CE[6] obtains information that evinces that Wegmans did have some degree of control over the decision to deny her application for benefits, she may move to amend the Complaint at that time.

---

[6] Because the Provider Plaintiffs lack standing, CE is the sole remaining plaintiff in the case.

### C.     Viability of Count I: Section 502(a)(1)(B)

Section 502(a)(1)(B) creates a civil action for a plan participant "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). To assert a claim under § 502(a)(1)(B), a plaintiff must demonstrate that "he or she [has] a right to benefits that is legally enforceable against the plan" and that the plan administrator improperly denied him or her those benefits. *Hooven v. Exxon Mobil Corp.*, 465 F.3d 566, 574 (3d Cir. 2006); *see also Manning v. Sanofi-Aventis, U.S. Inc.*, No. 3:11cv1134, 2012 U.S. Dist. LEXIS 114129, at *8 (M.D. Pa. Aug. 14, 2012) (citing *Erbe v. Billeter*, Civil Action No. 06-113, 2007 U.S. Dist. LEXIS 72835, at *22-23 (W.D. Pa. Sept. 28, 2007)).

Excellus argues that CE's claim under Section 502(a)(1)(B) must fail because she has failed to identify the plan provision under which she seeks relief, and because she does not identify the services rendered or the dates of services for the allegedly unclaimed claims. In the Complaint, CE has alleged that she is a beneficiary of the Plan, Compl. ¶ 6, and that the Plan requires Excellus to reimburse CE for the cost of out-of-network medical services "based on the usual, customary and reasonable rates for those services in the geographic area in which the medical provider is located." *Id.* at ¶¶ 9, 12. CE alleges that the services provided to her were medically necessary and appropriate according to the medical standards in the community where Dr. Cohen practices, and that the total claim for the services rendered was approximately $551,000. *Id.* at ¶¶ 37, 39. CE further alleges that Excellus used flawed or inadequate data and other information to determine the rate to reimburse CE, "which then resulted in reimbursements to Dr. Cohen well below the usual, customary and reasonable rates for out-of-network medical services." *Id.* at ¶ 75(b). In that regard, CE avers that the total payments made to her were

20

approximately $531,000 less than the amount of the claim, and represented less than 4% of the amount of the services billed.  *Id.* at ¶ 48.  CE has also alleged a number of other terms of the Plan that Excellus allegedly breached, such as failing to provide CE with accurate information regarding her rights and benefits under the Plan, failing to provide adequate written notice for the denial of benefits to CE in a manner calculated to be understood by her, and failing to state the specific reason for the adverse determination.  *See id.* at ¶ 75.

The Court finds that, after accepting as true the allegations contained within the Complaint, these statements constitute sufficient facts upon which to state a plausible claim under Section 502(a)(1)(B).  These factual allegations in the Compliant assert that CE is a beneficiary under the Plan, that she was entitled to reimbursements based on the usual, customary, and reasonable rates for out-of-network medical providers under the terms of the Plan, that Excellus wrongfully denied her these benefits, and that, by denying her benefits, Excellus has violated Section 502(a) of ERISA.  The Complaint also alleges that this denial was improper because Excellus used flawed or inadequate data to determine the usual, customary, and reasonably rates for Dr. Cohen's services.  Similar allegations have been found sufficient to survive a motion under Rule 12(b)(6) in this Circuit.  *See Gregory Surgical Servs., LLC v. Horizon Blue Cross Blue Shield of N.J., Inc.*, Civil Action No. 06-0462 (JAG), 2007 U.S. Dist. LEXIS 94056, at *11-12 (D.N.J. Dec. 19, 2007); *Erbe*, 2007 U.S. Dist. LEXIS 72835, at *22-23.  Accordingly, Excellus's motion to dismiss Count I of the Complaint is denied.[7]

---

[7] Excellus relies heavily on *McDonough v. Horizon Blue Cross Blue Shield*, Civil Action No. 09-571 (SRC), 2009 U.S. Dist. LEXIS 93642 (D.N.J. Oct. 7, 2009).  This case, however, differs significantly.  In *McDonough*, the Court found the complaint to be deficient because it failed to properly allege any wrongdoing on behalf of Horizon, the named defendant.  The complaint, rather, alleged that Horizon was expressly permitted under the Plan to rely on an outside database to calculate the usual and customary rates for a claim, but that the database used by Horizon to calculate benefits was flawed. The complaint, however, did "not charge, nor reasonably permit the inference, that Horizon was somehow involved in the generation of flawed data or complicit with the outside vendor such that it could be faulted, as a breach of the health plan, for inaccurate [usual and customary rates]."  *McDonough*, 2009 U.S. Dist. LEXIS 93642, at *7-8. Therefore, the complaint failed "to give notice of what Horizon did in contravention of

21

### D.     Viability of Count II: Section 502(c)(1)(B)

Pursuant to Section 502(c), a plan beneficiary and/or participant may pursue civil remedies when plan administrators fail to provide documentation in response to written requests by the beneficiary and/or participant for information to which they are entitled.  *See*  29 U.S.C. 1132(c)(1) ("Any administrator . . . who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary . . . by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day . . . .").  Correspondingly, 29 U.S.C. § 1024(b)(4) states that "the administrator shall, upon written request of any participant or beneficiary, furnish a copy of the . . . instruments under which the plan is established or operated."  *See also Bicknell v. Lockheed Martin Group Benefits Plan*, 410 F. App'x 570, 577 (3d Cir. 2011).

A plausible claim under Section 502(c)(1)(B) requires allegations that: (1) that the plaintiff is a plan participant or beneficiary; (2) that the plaintiff made a written request to the plan administrator for information that falls within the scope of the disclosure requirements of ERISA; and (3) that the requested documents were not provided within thirty days of the written request.  *Wargotz v. Net Jets, Inc.*, Civ. No. 09-4789 (WJM), 2010 U.S. Dist. LEXIS 47118, at *7 (D.N.J. May 13, 2010) (citing 29 U.S.C. § 1132(c)(1)(B)).  The Third Circuit has explained that the legislative history of ERISA "makes clear that Congress intended the information-producing provisions to enable claimants to make their own decisions on how best to enforce their rights."  *Daniels v. Thomas & Betts Corp.*, 263 F.3d 66, 77 (3d Cir. 2001); *see also Pane v.*

---

the terms of the health plan and/or in violation of ERISA."  *Id.* at *7.  Here, the Complaint clearly alleges that it was the actual conduct of Excellus that contravened the terms of the health plan, i.e., that Excellus intentionally used and/or generated flawed data that led to an underpayment of benefits in violation of the Plan and/or ERISA.

*RCA Corp.*, 868 F.2d 631, 638-39 (3d Cir. 1989) (holding that the plan beneficiary's 1132(c) claim failed because the beneficiary did not actually request any information to which he was entitled). "To be clear, in order to obtain plan documents under ERISA, a beneficiary and/or participant must make the written request." *Cohen*, 820 F. Supp. 2d at 609 (citing *McDonough v. Horizon Blue Cross Blue Shield of New Jersey, Inc.*, No. 09-571, 2011 U.S. Dist. LEXIS 108903, at *20-21 (D.N.J. Sep. 20, 2011)).

This claim, therefore, lacks merit for the same reason that this Court dismissed this identical claim when last brought by Dr. Cohen before this Court. *See Cohen*, 820 F. Supp. 2d at 609. Just as in that case, CE has not alleged that she—the Plan beneficiary—made a request for written documents. Rather, the Complaint alleges that Dr. Cohen and POA, on behalf of CE, requested "the complete contents of the claim file and all relevant documents, including, but not limited to, the summary plan description." Compl. ¶ 84. This failure to allege that the plan beneficiary made the written request is fatal to Plaintiffs' claim under § 503(c).[8] Accordingly, this claim must be dismissed. "Of course, to the extent this Count is premised upon [the Provider Plaintiff's] request as an assignee, it also fails to state a claim because the assignment [the Provider Plaintiffs] received was not valid."[9] *Cohen*, 820 F. Supp. 2d at 609.

## IV.   **Conclusion**

For the foregoing reasons, the Court concludes that Wegmans is dismissed as a defendant. In that regard, if during the course of discovery, CE obtains information that would

---

[8] Perhaps realizing this, Plaintiffs have not opposed Excellus's motion to dismiss this Count.
[9] Even if there was no applicable anti-assignment provision in the Plan, there is no assignment language in the Complaint expressly granting the Provider Plaintiffs the right to recover statutory penalties for the failure to provide documents pursuant to § 502(c)(1)(B). Because the right to bring a claim under § 502(c)(1)(B) cannot be assigned "by implication or by operation of law," but rather must be "express and knowing," Plaintiffs lack standing to bring a § 502(c)(1)(B) claim. *Sanctuary Surgical Ctr., Inc. v. Aetna Inc.*, 546 F. App'x 846, 851 (11th Cir. 2013) (quoting *Tex. Life, Acc. Health & Hosp. Serv. Ins. Guar. Ass'n v. Gaylord Entm't Co.*, 105 F.3d 210, 218-19 (5th Cir. 1997)) (holding that plaintiffs lack standing to bring a claim under § 502(c), and explaining that "[t]he plaintiffs' contention stretches beyond its breaking point the plain meaning of the agreement, which assigns only the right to receive benefits and not the right to assert claims for . . . civil penalties").

support allegations of Wegmans as a proper defendant, she may move to amend the Complaint at

that time.  Next, because Plaintiffs have not plausibly alleged an assignment of benefits or rights

under the Plan and because the Plan prohibits the assignment of benefits, the Provider Plaintiffs

lack standing to bring any claims in this case.  Finally, Count II by CE is dismissed for failure to

state a claim.  Accordingly, only Count I against Excellus remains in the case at this time, as well

as "Count III" for attorney's fees.  An appropriate order accompanies this Opinion.

/s/ Freda L. Wolfson
FREDA L. WOLFSON, U.S.D.J.

Dated: July 15, 2015