*NOT FOR PUBLICATION*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ——————————————— | : | |
| PATIENT C.E., | : | |
| | : | |
| Plaintiff, | : | |
| | : | Civ. Action No.: 14-6950 (FLW)(DEA) |
| v. | : | |
| | : | **OPINION** |
| EXCELLUS BLUE CROSS BLUE | : | |
| SHIELD, | : | |
| | : | |
| Defendant. | : | |
| ——————————————— | : | |

**WOLFSON, United States District Judge:**

This matter arises out of a dispute between plaintiff C.E. ("Plaintiff" or "C.E.") and

Excellus Blue Cross Blue Shield ("Defendant" or "Excellus") for underpayment of claims for

medical services provided by Jason Cohen, M.D., F.A.C.S. ("Dr. Cohen"), and his practice,

Professional Orthopedic Associates, P.A. (collectively, the "Providers").  Plaintiff[1] was insured by

the Wegmans Food Market, Inc. ("Wegmans") health benefits plan (the "Plan"), which is governed

under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, et seq., and

administered by Excellus.[2]  Presently before the Court is a motion for summary judgment filed by

---

[1] In her statement of undisputed material facts, without citing to any evidence in the record, Plaintiff asserts that "Patient CE is an employee of Wegmans."  Pl.'s SOF, ¶ 5.  However, based on record, it is clear that Plaintiff is the child of the Wegmans employee and participant in the Plan.  See, e.g., Pl.'s Exs. D-J.  Nevertheless, it is undisputed that Plaintiff is eligible to receive benefits under the Plan.

[2] The Providers were also named as plaintiffs in this matter, and Wegmans was named as a defendant.  However, this Court previously ruled that the Providers did not have standing to bring claims against Excellus and Wegmans, and that Wegmans was not a proper defendant, because Plaintiff failed to establish that Wegmans exercised any discretion or control over the

Excellus, pursuant to Fed. R. Civ. P. 56, seeking a declaration that Plaintiff cannot establish that the benefits determination in this matter was arbitrary and capricious, and a cross-motion for summary judgment filed by Plaintiff, asserting that Excellus' benefits determination was, in fact, arbitrary and capricious. For the reasons set forth below, Excellus' motion for summary judgment is **DENIED**, and Plaintiff's cross-motion for summary judgment is **GRANTED** insofar as this matter shall be remanded to Excellus for a full and fair review of the denied medical reimbursement claims.

## I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY[3]

On May 24, 2013, Dr. Cohen, who is a board certified orthopedic surgeon, performed spinal surgery on Plaintiff at the Monmouth Medical Center in Long Branch, New Jersey. See Plaintiff's Statement of Undisputed Material Facts ("Pl.'s SOF") ¶¶ 2, 7, 12; Defendant's Statement of Undisputed Material Facts ("Def.'s SOF") ¶ 16. After the operation, the Providers submitted a health insurance claim form for reimbursement to Excellus for the medical services rendered in the amount of $550,971.00. Pl.'s SOF ¶ 7, 13-14; Def.'s SOF ¶ 16, 23. The Providers are out-of-network ("ONET") providers that "do not have a contract with Excellus to accept agreed upon rates for services provided…." Pl.'s SOF ¶ 8. Plaintiff was aware that the Providers were ONET. Id. at ¶ 9; see Def.'s SOF ¶ 18. Once Excellus received the claim, Excellus split the claim into two separate claims: (i) claim number 3D776265C-00-00 ("Claim One"), which totaled

---

administration of benefits under the Plan. See Opinion, dated July 15, 2015. Thus, the only remaining defendant is Excellus.

[3] It is undisputed that the Providers were authorized as a designated representative for Plaintiff at all relevant times.

2

$391,650.00; and (ii) claim number 3D6836762B-00-00 ("Claim Two"), which totaled $159,111.00. See Pl.'s Ex. D, E.

Under the Plan, Excellus is the claims administrator. See Pl.'s Ex. R, p. 60. Specifically, the Plan states that "[Wegmans] has retained [Excellus] to assist [Wegmans] in making the initial claims determination as well as determinations on appeal as the claims fiduciary. Accordingly, [Wegmans] has delegated to [Excellus] discretionary authority to construe and interpret questions related to claims for Benefits under the terms of the Employer's Group Health Plan." Id. However, the Plan further states that Excellus retained BlueCross BlueShield of South Carolina ("BCBS of South Carolina") as "a primary provider of claims processing, customer service, medical management, and other services." Id. at p. 5-6. In pertinent part, the Plan provides that an insured is "free to use a non-participating provider [that has not agreed to accept the traditional Blue Cross Blue Shield fee schedule]; however, the claim will be paid based on the local usual, reasonable, and customary (UCR) charge for the service rendered."[4] Id. at p. 4. The Plan explains that "[t]he UCR price is likely to be lower than the amount the provider is charging[, and that] [y]ou are responsible to pay the provider any amounts above the UCR amount that he may bill you as well as any applicable co-payments and co-insurance and deductible amounts." Id. In addition, when a participant or beneficiary chooses to receive ONET services, "the Plan pays 50 percent of the covered expenses, unless otherwise stated. You are responsible for the remaining 50 percent." Id.

---

[4] In addition to non-participating ONET providers, such as the Providers in this case, the Plan identifies two other provider classifications: (i) Blue Cross Blue Shield PPO Participating Providers (in-network); and (ii) Blue Cross Blue Shield Traditional Participating Providers (out-of-network), who have "agreed to accept the traditional BCBS fee schedule for their services." Pl.'s Ex. R, 3-4.

at p. 15.  However, the Plan does not cover "[a]ny service, supply, or charge the covered member is not legally obligated to pay."[5]  Id. at p. 46.

Furthermore, the Plan provides that, when a claim is properly filed, and that claim is denied in whole or in part, the plan administer will provide the insured with the following notice of an adverse determination:

- State the specific reason(s) for the Adverse Benefit Determination;
- Reference the specific Plan of Benefits provision on which the determination is based;
- Describe additional material or information, if any, needed to complete the claim and the reasons such material or information is necessary;
- Describe the claims review procedures and the Plan of Benefits and the time limits applicable to such procedure, including a statement of the Covered Member's right to bring a civil action under section 502(a) of ERISA following an Adverse Benefit Determination on review;
- Disclose any internal rule, guideline, or protocol relied on in making the Adverse benefit Determination (or state that such information is available free of charge upon request)….

Id. at p. 57.

In the Explanation of Benefits ("EOB") letter for Claim One, dated July 1, 2013, BCBS of South Carolina determined that Plaintiff was entitled to $14,107.42 of the total charge for the claim, which was $391,650.  Pl.'s Ex. G.  Approximately seven months later, on January 27, 2014, BCBS of South Carolina made an adjustment to Claim One, and it paid Plaintiff an additional

---

[5] In support of Excellus' motion, Kelly Cobb ("Cobb"), who is an employee at BCBS of South Carolina, explained that Excellus is considered the "Home Plan," and Horizon Blue Cross Blue Shield of New Jersey ("Horizon") is considered the "Host Plan."  Declaration of Kelly Cobb ("Cobb Decl.") ¶ 5.  Debbie D'Ambrosio ("D'Ambrosio"), a legal administrator in the litigation department at Excellus, further explained that Horizon is the "Host Plan" because Plaintiff received services from the Providers in New Jersey.  Declaration of Debbie D'Ambrosio ("D'Ambrosio Decl.") ¶ 17.  Cobb confirmed that "Horizon is considered the 'Host Plan' and its pricing methodologies are utilized in the pricing of the claims" in this matter.  Cobb Decl. ¶ 5.  Specifically, Cobb stated that "[t]he data transferred by Horizon to BCBS of South Carolina indicated the 'Host Plan' pricing for out-of-network services was 150% of CMS."  Id. at ¶ 9.  However, the term "CMS" is left undefined by Cobb.

$1,335.60 for a total of $15,443.02.  Pl.'s Ex. J.  With respect to Claim Two, on June 17, 2013, BCBS of South Carolina sent Plaintiff an EOB, concluding that she was entitled to $1,361.97 of the claimed amount of $159,111.00.  Pl.'s Ex. F.  In September 2013, however, BCBS of South Carolina made two separate adjustments, raising the total amount paid out on Claim Two to $4,905.31.  See Pl.'s Exs. H and I.  In total, Excellus paid Plaintiff $20,348.33 for Claims One and Two.[6]

Under the Plan, an appeal must be filed within "one hundred eighty (180) days from receipt of an Adverse Benefit Determination…."  Pl.'s Ex. R, p. 58.  Once the appeal is received, the plan administrator must render a decision "within a reasonable period of time, but no later than thirty (30) days after the receipt of the appeal."  Id. at p. 59.  In addition, the person that made the initial decision shall not participate in the appeal determination, and "[n]o deference will be afforded to the initial determination."   Id. at p. 58.  If the participant or beneficiary disagrees with the appeal determination, he or she "can submit a second appeal within ninety (90) days after receipt of the final decision of the first appeal," and the plan administrator shall make a decision on the second appeal "no later than thirty (30) days…."  Id.  In general, when an appeal is denied in whole or in part, the Plan provides that the plan administrator will provide the insured with following notice:

- State specific reason(s) for the Adverse Benefit Determination;
- Reference specific provision(s) of the Plan of Benefits on which the Benefit determination is based;
- State that the Covered Member is entitled to receive, upon request and free of charge, reasonable access to and copies of all documents, records, and other information relevant to the claim for Benefits;
- Disclose any internal rule, guideline, or protocol relied on in making the Adverse Benefit Determination (or state that such will be provided free of charge upon request);

* * *

---

[6] In her statement of facts, Plaintiff stated that "Excellus' total payments to Patient CE for Dr. Cohen's Services were $20,024.43."  Pl.'s SOF ¶ 26.  However, this appears to be a clerical error, since it is inconsistent with the EOBs provided by Plaintiff as exhibits to her motion.

- Include a statement regarding the Covered Member's right to bring an action under section 502(a) of ERISA.

Id. at p. 60.

On September 25, 2013, the Providers, acting on behalf of Plaintiff as her designated representatives, filed the first appeal with Excellus specifically challenging the partial denial of benefits.  See Def.'s SOF ¶ 25; Pl.'s SOF ¶ 28; see also Pl.'s Ex. L.  In that appeal, the Providers stated: "Please be advised that our fee schedules on these CPT codes are well [within] the usual and prevailing rates for each of these procedures in the geographic area… which is supported by numerous payments from many payors in the area and supported by Physician Fee publications from multiple industry commercial publishers."[7]  Pl.'s Ex. L.  The Providers further stated:

> Your claim denial procedural notice was inadequate under ERISA § 503, 29 U.S.C. § 1133 because it fails to provide the specific reason or reasons for denial and the specific reference to pertinent plan provision on which the denial is based.  It also fails to advise of claimant's right to review all the "pertinent documents" on which your denial decision is based.  Furthermore, although it states that you will review additional medical information, it does not contain explicit information as to the steps to be taken if the participant/beneficiary wishes to submit his claim for review, nor is there any indication of what additional proof might be required.  Baldfaced [sic] conclusions do not satisfy the ERISA denial notice requirements.

Id.  The Providers continued, "in order to secure a meaningful participation of a full and fair review of the denied claims, **we hereby specifically request from you**, the plan administrator or appropriate named fiduciary, any copies of the plan documents under which this plan is operated and upon which the above captioned claim denial is based, procedures, formulas, methodologies, guidelines, schedules, protocols, and other guidelines: all documents which the plan reviewed or could have reviewed in denying this claim…."  Id. (emphasis in the original).  Furthermore, the Providers attached various exhibits to the written appeal, including the sample EOBs purporting

---

[7] For instance, in a letter attached to the appeal, the Providers reasoned that Excellus only paid $3,249.74 for one of the procedures, but "the U&R for this code in this geographic area is $44,426.00."  Pl.'s Ex. L.

to show payments made by other insurance providers for similar services, a portion of the Ingenix "Optum Customized Fee Analyzer [for] Orthopaedic Surgery and Physical Therapy," and Plaintiff's operative reports.  Id.

On November 6, 2013, in a single page letter, BCBS South Carolina denied the appeal of an adverse benefit determination, stating in pertinent part: "After careful review, we determined that this claim was processed correctly.  According to the claims area, the payment amount on the claim matches the amount sent over to us from your local.  If there is a pricing question, it should addressed [sic] within your contact with the local."  Pl.'s Ex. M.  In addition, BCBS of South Carolina stated, "No further action is required."  Id.

On December 17, 2013, the Providers assert that they filed the second appeal with Excellus; however, Excellus disputes whether the Providers actually filed this appeal.[8]  Pl.'s Ex. N.  Plaintiff states that neither she nor the Providers received a response to the appeal submitted on December 17, 2013.  Pl.'s SOF ¶ 36.  Nevertheless, it is undisputed that the Providers filed another appeal on March 18, 2014.  Def.'s SOF ¶ 29; see Pl.'s Ex. O.  In the letter, dated March 18, 2014, the Providers state that "[w]e still do not believe the claim was processed correctly.  We are aware that reimbursement rates are typically adjusted based on the usual and customary treatment charges for

_____

[8] Based on the conflicting evidence attached to Plaintiff's motion, it is unclear whether the Providers submitted a second appeal on December 17, 2013, or whether the second appeal was actually submitted on March 18, 2014.  In Exhibit N, Plaintiff attached the "BlueCard Claims Appeal Form," which is dated December 17, 2013, and the form states that the Providers attached a letter in connection with that appeal.  See Pl.'s Ex. N.  However, in that same exhibit, the Providers attached two identical letters, both of which are dated March 18, 2014 – the date of a separate administrative appeal.  Id.  In the letters, the Providers state that they are "sending this 2nd appeal as the designated authorized representative for [Plaintiff] to dispute the processing of the claim."  Id.  Nevertheless, the date on which Plaintiff and the Providers filed their second administrative appeal is not relevant to the analysis here, because Excellus does not contend that Plaintiff failed to timely file her appeals.

that specialty and the geographical region[, but] [y]ou do not divulge the source that you used to arrive at your claim determination."  Id. at Ex. N.  The Providers again attached sample EOBs purporting to show payments made by other insurance providers for similar services and portions of the Ingenix fee analyzer.  Id. at O.

On April 3, 2014, BCBS of South Carolina responded to the appeal in a single-page letter, stating that it considered the "[l]etter from the member," [r]eview of the relevant plan provision," and "[r]eview of all documentation received."  D'Ambrosio Decl., Ex. E.  However, BCBS of South Carolina concluded that "[w]e processed the claim(s) correctly according to your out-of-network, inpatient processional benefit," and instructed the Providers that "[n]o action is necessary unless you have additional questions."  Id.

Even though BCBS of South Carolina denied the appeal on substantive grounds, Horizon Blue Cross Blue Shield of New Jersey ("Horizon") subsequently sent the Providers two letters, dated July 30, 2014, acknowledging that Horizon received an appeal on March 21, 2014.  See Pl.'s Exs. P and Q.  With respect to Claim One, Horizon stated:

> Per your request this is the response on your appeal from the member's benefits: Ineligible for appeal, Please be advised this claim has already had one appeal, only the member may appeal at this time, thanks jc.  The claim for a total charge of $390,860.00 was processed correctly.

Id. at P.  In connection with Claim Two, Horizon similarly stated that the Providers were "[i]neligible for Appeal.  This is past the 180 days for timeliness for the claim to be reviewed.  No further action is needed.  Denial stands.  The claim for a total charge of $159,111.00 was processed correctly."  Id. at Q.

On August 19, 2014, it appears that the Providers filed another appeal with Excellus.[9] Declaration of Matthew Baker, Esq. ("Baker Decl."), Ex. 1 at p. 96-99.  In that appeal, the Providers stated "that this our third and final appeal and that we have exhausted all administrative remedies regarding this claim."  Id. at p. 96.  The Providers specifically stated that "[t]he claims were processed incorrectly."  Id.  Similar to the first appeal, which was filed on September 25, 2013, the Providers attached, inter alia, "[s]ample EOB's paid by both you and other payers for the same procedures and a UCR reasonable and customary scale…."  Id.  On August 29, 2014, BCBS of South Carolina once again denied the appeal, stating that "[w]e processed the claim(s) correctly according to your out-of-network, inpatient physician services benefit," and it reiterated that "[n]o action is necessary unless you have additional questions."  D'Ambrosio Decl., Ex. F.

On November 6, 2014, Plaintiff filed her Complaint, asserting three counts: (i) violation of § 502(a)(1)(B) of ERISA for failing to appropriately pay billed charges for the medical services rendered; (ii) violation of § 502(c)(1)(B) for failing to provide certain documents to the Providers; (iii) a claim for attorney's fees.  On December 29, 2014, Excellus and Wegmans filed separate motions to dismiss the Complaint.  As discussed supra, on July 15, 2015, this Court dismissed both the Providers and Wegmans as parties to this action, as well as the claim for violation of § 502(c)(1)(B) of ERISA as to all parties.  See Opinion dated July 12, 2015.  Thus, the remaining claims are for violation of § 502(a)(1)(B) and for attorney's fees.  See id.  On July 22, 2016, Excellus filed a motion for summary judgment, and Plaintiff then cross-moved for summary judgment on July 25, 2016.  Both motions are opposed.

## II.    LEGAL STANDARD

---

[9] In her motion, Plaintiff declares that the Providers did not submit this appeal; however, Excellus has attached the purported administrative appeal from the Providers, as well as the denial from BCBS of South Carolina.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute is genuine only if there is "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party," and it is material only if it has the ability to "affect the outcome of the suit under governing law." Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. Anderson, 477 U.S. at 248. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Curley v. Klem, 298 F.3d 271, 276-77 (3d Cir. 2002).

The party moving for summary judgment has the initial burden of showing the basis for its motion. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "If the moving party will bear the burden of persuasion at trial, that party must support its motion with credible evidence... that would entitle it to a directed verdict if not controverted at trial." Id. at 331. On the other hand, if the burden of persuasion at trial would be on the nonmoving party, the party moving for summary judgment may satisfy Rule 56's burden of production by either (1) "submit[ting] affirmative evidence that negates an essential element of the nonmoving party's claim" or (2) demonstrating "that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." Id. Once the movant adequately supports its motion pursuant to Rule

56(c), the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Id. at 324; see also Matsushita, 475 U.S. at 586; Ridgewood Bd. of Ed. v. Stokley, 172 F.3d 238, 252 (3d Cir. 1999).  In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249.  Credibility determinations are the province of the factfinder.  Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

There can be "no genuine issue as to any material fact," however, if a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322-23.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id. at 323; Katz v. Aetna Cas. & Sur. Co., 972 F.2d 53, 55 (3d Cir. 1992).

## III.   DISCUSSION

Excellus argues that Plaintiff cannot establish that the benefit determinations in this matter were arbitrary and capricious.  It is undisputed that the Plan provides Excellus with discretionary authority to make benefit determinations, including the calculation of all usual and customary rates for similar procedures in the same geographic region, and that it, in turn, retained BCBS of South Carolina as a primary provider of claims processing and other services.  Excellus contends that BCBS of South Carolina properly processed the instant benefits claims based on the appropriate pricing methodologies under the Horizon plan, since Plaintiff received ONET professional services in the State of New Jersey.  Furthermore, Excellus maintains that Plaintiff was advised,

pursuant to the plain language of the Plan, that reimbursement for ONET services is often lower than the amount the provider has charged.  Indeed, Excellus argues that that courts in this district have held that a plan administrator did not act arbitrarily or capriciously when the administrator failed to provide the participant or beneficiary with specific information pertaining to the method of its decision, or reimburse the provider its alleged usual and customary rate.

However, Plaintiff, relying on <u>Miller v. Am. Airlines, Inc.</u>, 632 F.3d 837 (3d Cir. 2011), contends that Excellus acted arbitrarily and capriciously because it violated the plain language of the Plan, as well as the strictures of 29 U.S.C. § 1133, and its accompanying regulations, 29 C.F.R. § 2560.503-1.  In particular, Plaintiff asserts that Excellus' decisions – both the initial adverse benefits determination and the denials on appeal – were arbitrary and capricious because Excellus: (i) failed to adequately explain its adverse benefits determination to Plaintiff, specifically Excellus failed to set forth the usual and customary rates for medical services in the geographic area; (ii) failed to provide Plaintiff with an opportunity to "perfect" her benefits claim; and (iii) did not provide sufficient explanation to Plaintiffs in its denial of the appeals, including the specific provision of the Plan on which the determination for payment was based.

a.    **Standard of Review under ERISA**

Section 502(a)(1)(B) of ERISA permits a civil action to be brought by a participant or beneficiary "to recover benefits due to him [or her] under the terms of the plan."  29 U.S.C. § 1132(a)(1)(B).  The Supreme Court has long held that a denial of benefits under ERISA is to be reviewed "under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." <u>Firestone Tire and Rubber Co. v. Bruch</u>, 489 U.S. 101, 115 (1989).  Thus, where the plan affords the administrator discretionary authority, the administrator's interpretation of the plan "will not be

dismissed if reasonable."  See Mitchell v. Eastman Kodak Co., 113 F.3d 433, 437 (3d Cir. 1997) (quoting Firestone, 489 U.S. at 111).  Stated differently, when a plan administrator has discretion to determine whether a claimant is eligible for benefits, the plan administrator's decision is subject to review under an arbitrary and capricious standard.  Doroshow v. Hartford Life and Acc. Ins. Co., 574 F.3d 230, 233 (3d Cir. 2009); see Funk v. Cigna Group Ins., 648 F.3d 182 (3d Cir. 2011) ("In the ERISA context, the arbitrary and capricious and abuse of discretion standards of review are essentially identical.").  The Third Circuit has cautioned that "[t]he scope of this review is narrow, and the court is not free to substitute its own judgment for that of the defendants in determining eligibility for plan benefits."  Doroshow, 574 F.3d at 234 (internal quotation marks and citation omitted).

Here, the Plan grants "discretionary authority" to Excellus to make claim determinations. See Pl.'s Ex. R, p. 60 ("[Wegmans] has delegated to [Excellus] discretionary authority to construe and interpret questions related to claims for Benefits under the terms of the Employer's Group Health Plan.").  Based on that provision, the Court finds that Excellus has discretion to determine whether the claimant is entitled to benefits, and as such, there is no dispute that Excellus' decision here is subject to review under the arbitrary and capricious standard.  See Doroshow, 574 F.3d at 233.

In determining whether the denial of benefits was arbitrary and capricious, courts review "various procedural factors underlying the administrator's decision-making process, as well as structural concerns regarding how the particular ERISA plan was funded."  Miller, 632 F.3d at 845; see Schweikert v. Baxter Healthcare Corp., No. 12-5876, 2015 WL 4578443, at *17 (D.N.J. July 29, 2015).  "The structural inquiry focuses on the financial incentives created by the way the plan is organized," i.e., whether there is a conflict of interest, and "the procedural inquiry focuses

on how the administrator treated the particular claimant." <u>Post v. Hartford Ins. Co.</u>, 501 F.3d 154, 162 (3d Cir. 2007).  In the instant matter, Plaintiff does not raise any arguments pertaining to structural concerns, <u>see</u>, <u>e.g.</u>, <u>Metro. Life Ins. Co. v. Glenn</u>, 554 U.S. 105, 128 (2008) (stating that a conflict of interest can be created when an employer both funds and evaluates employee claims), but rather, she contends that Excellus committed various procedural irregularities throughout the decision-making process.

### b.   Procedural Irregularities

Although the notice requirements in 29 U.S.C. § 1133 (also referred to as § 503 of ERISA) govern both the initial adverse benefit determinations, such as the EOBs in this matter, and the denial of administrative appeals, the Department of Labor has promulgated separate regulations governing the manner and content of the notification for each type of determination.  <u>See</u> 29 C.F.R. § 2560.503–l(g) (governing the initial denial correspondence); 29 C.F.R. § 2560.503–1(j) (governing the denial of appeals correspondence).  Because the pertinent regulations treat the initial benefit denial differently than the administrative appeal denial, and for the sake of clarity, this Court addresses those two types of determinations separately.

### 1.   <u>Initial Adverse Benefit Determinations</u>

Plaintiff first argues that Excellus failed to properly explain its initial adverse benefits determination in the EOBs, as required under 29 U.S.C. § 1133, and its accompanying regulations, 29 C.F.R. § 2560.503-1(g).[10]  Furthermore, Plaintiff contends that Excellus did not identify the additional material or information necessary to perfect her claim and an explanation of why such material or information was necessary.  To determine whether a procedural irregularity occurred,

---

[10] Plaintiff also argues that Excellus did not adhere to the plain language of the Plan.  Because the language of the Plan is nearly identical to the requirements under § 503, the Court will address these arguments together.

and how the irregularity impacted the proceedings, courts must determine "whether... the administrator has given the court reason to doubt its fiduciary neutrality." Post, 501 F.3d at 165; see Feeko v. Pfizer, Inc., 636 Fed. Appx. 98, 105 (3d Cir. 2016) ("Procedural irregularities factor into the court's review of an administrator's decision insofar as they demonstrate a 'reason to doubt its fiduciary neutrality.') (quoting Miller, 632 F.3d at 845).

The Third Circuit has articulated five procedural irregularities that are significant in determining whether there is a reason to doubt an administrator's fiduciary neutrality: (i) reversal of a previous decision to award benefits; (ii) imposition of a nonexistent requirements extrinsic to the plan; (iii) failure to satisfy the minimum procedural requirements of § 503, and its accompanying regulations, when making a benefits determination; (iv) failure to address all relevant diagnoses prior to termination a claimant's benefits; and (v) failure to consider the claimant's ability to perform his or her job requirements in connection with all relevant diagnosis. See Miller, 632 F.3d at 848-55; see also Morrison v. PNC Fin. Servs. Grp., Inc., No. 13-804, 2015 WL 1471865, at *5 (D.N.J. Mar. 31, 2015), appeal dismissed sub nom., Morrison v. Liberty Life Assurance Co. of Boston, 657 Fed. Appx. 76 (3d Cir. 2016).

With respect to the third scenario, which is relevant here, the Third Circuit has advised that "an administrator's compliance with § 503 in making an adverse benefit determination is probative of whether the decision to deny benefits was arbitrary and capricious." Miller, 632 F.3d at 851; see Morningred v. Delta Family-Care & Survivorship Plan, 526 Fed. Appx. 217, 220 (3d Cir. 2013) ("'[N]oncompliance' with ERISA's notice requirements 'weighs in favor of finding that decision was arbitrary and capricious.'") (quoting Miller, 632 F.3d at 851-52). The court explained that "a plan that does not satisfy the minimum procedural requirements of § 503 and its regulations

operates in violation of ERISA." Miller, 632 F.3d at 852-52.  § 503 of ERISA requires that every

employee benefit plan must:

> (1) provide adequate notice in writing to any participant or beneficiary whose claims for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and
>
> (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

29 U.S.C. § 1133(1)-(2); see Mirza v. Ins. Adm'r of Am., Inc., 800 F.3d 129, 136 (3d Cir. 2015)

("One of the purposes of 29 U.S.C. § 1133... is to provide claimants with adequate information to

ensure effective judicial review.").  The accompanying regulations note that "this section sets forth

minimum requirements for employee benefit plan procedures pertaining to claims for benefits by

participants and beneficiaries."  29 C.F.R. § 2560.503-1(a).  With respect to an initial adverse

benefit determination, the notification must be in writing and must include:

> (i) The specific reason or reasons for the adverse determination;
>
> (ii) Reference to the specific plan provisions on which the determination is based;
>
> (iii) A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary
>
> (iv) A description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review;
>
> (v) In the case of an adverse benefit determination by a group health plan—
>
> (A) If an internal rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination, either the specific rule, guideline, protocol, or other similar criterion; or a statement that such a rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination and that a copy of such rule, guideline, protocol, or other criterion will be provided free of charge to the claimant upon request...

29 C.F.R. § 2560.503-1(g)(1)(i)-(v)(A).

16

The Third Circuit's decision in <u>Miller</u> illustrates how these notice requirements operate.  In <u>Miller</u>, an employer awarded the plaintiff long-term disability benefits after he suffered psychotic episode, but the employer later sent the plaintiff an adverse determination letter, since the employer "could no longer substantiate [the employee's] disability and terminated his benefits as a result." <u>Miller</u>, 632 F.3d at 841-42.   Nevertheless, the Third Circuit concluded, <u>inter</u> <u>alia</u>, that the termination-of-benefits letter was legally deficient because it only contained "a general blanket assessment that [the plaintiff was] ineligible for [] benefits" and did not provide the insured with the specific reasons for the determination.  <u>Id.</u> at 852.

Excellus contends that it complied with the minimum notice requirements, and that BCBS of South Carolina was not required to disclose how it calculated the ONET benefits in the initial adverse benefit determinations.  Courts in this district have concluded that, when an administrator makes a determination about usual and customary rates, § 503 does not require the administrator to provide a claimant with "the functional equivalent of a data report on the calculation of [usual and customary rates]."  <u>Franco v. Connecticut Gen. Life Ins. Co.</u>, 818 F. Supp. 2d 792, 823 (D.N.J. 2011), <u>rev'd on other grounds</u>, 647 Fed. Appx. 76 (3d Cir. 2016); <u>see</u> <u>McDonough v. Horizon Blue Cross Blue Shield of New Jersey, Inc.</u>, No. 09-571, 2011 WL 4455994, at *6 (D.N.J. Sept. 23, 2011) ("Such disclosure of detailed statistical compilations and data [used in calculating the usual and customary rates] was certainly not the intent of the drafters of ERISA or related regulations."); <u>see also</u> <u>Atl. Spinal Care v. Aetna</u>, No. 12-6759, 2014 WL 1293246, at *11 (D.N.J. Mar. 31, 2014).

In <u>Franco</u>, the plaintiffs argued that "the EOB record does not say ***how*** it calculated the 'prevailing charge' and whether Ingenix data (or some other data or methodology) was used to compute it."  <u>Franco</u>, 818 F. Supp. 2d at 823 (emphasis in original).  However, the court concluded:

> Section 503 requires that a "specific reason" be given for a claim denial; it does not require, as [the plaintffs'] theory of liability would suggest, that the plan also

> explain what information the plan considered in arriving at its decision, in this case,
> the ONET claims processing methodology. No ERISA provision or implementing
> regulation requires an insurer to provide every bit of data underlying a claim
> decision and details about the way in which that data was used.

Id.  When the court in <u>McDonough</u> was confronted with a nearly identical argument, it similarly held that § 503 does not impose heightened notification requirements for reimbursement claims, specifically reasoning that "[n]o ERISA provision or implementing regulation requires an insurer to provide every bit of data underlying a claim decision and details about the way in which that data was used."  <u>McDonough</u>, 2011 WL 4455994, at *6.  Distilled to their essence, <u>Franco</u> and <u>McDonough</u> hold that a plan administrator is not required to explain the specific data and methodologies used to calculate the usual and customary rates in an initial adverse benefit determination; instead, § 503 and its implementing regulations only require that the plan administrator meet the minimum procedural requirements, <u>i.e.</u>, a specific reason for the denial and citation to the relevant provision of the plan.  See <u>Franco</u>, 818 F. Supp. 2d at 822-23; <u>McDonough</u>, 2011 WL 4455994, at *6.

While <u>Franco</u> and <u>McDonough</u> do not explain what constitutes a "specific reason" in connection with reimbursement claims, an administrator must "set out in opinion form the rationale supporting [its] decision."  <u>Halpin v. W.W. Grainger, Inc.</u>, 962 F.2d 685, 693 (7th Cir. 1992) (internal quotation marks and citation omitted).  Conclusory statements are not tantamount to a specific reason.  See <u>Miller</u>, 632 F.3d at 852; <u>see also</u> <u>Halpin</u>, 962 F.2d at 693 (stating that "bare conclusions are not a rationale").  In the context of reimbursement claims, a plan administrator satisfies the minimum procedural requirements when it specifically explains, for example, that the claim was not properly documented, or "the charges exceeded the reasonable and customary fees, or were improperly bundled."  <u>Diagnostic Med. Assocs., M.D., P.C. v. Guardian Life Ins. Co. of Am.</u>, 157 F. Supp. 2d 292, 300 (S.D.N.Y. 2001).  Without such an

explanation, the claimant is left to speculate about the reason that particular claim was rejected, thus depriving the claimant of the opportunity to a full and fair review.  See 29 U.S.C. § 1133; see also Syed v. Hercules Inc., 214 F.3d 155, 162 (3d Cir. 2000).

In the instant matter, each of the EOBs sent to Plaintiff and the Providers contained a summary of information, in the form of a table chart, which provides in pertinent part: (i) the provider who performed the medical procedure; (ii) whether the provider participated in the Blue Cross Blue Shield network; (iii) the date on which the service was provided; (iv) the type of service provided; (v) the amount the provider charged; and (vi) the covered amount paid.  See Pl.'s Ex. G – J.  Although the EOBs contained some relevant information, that information does not satisfy the requirements under 29 U.S.C. § 1133 and 29 C.F.R. § 2560.503-1(g).  Here, the EOBs are not "written in a manner calculated to be understood by the [claimant]," see 29 U.S.C. § 1133(1), because BCBS of South Carolina failed to provide any written explanation about the information contained in the table charts.  Relatedly, the table charts do not provide a rationale for the denial of each reimbursement claim, but rather, they are a recitation of bare conclusions.  See Miller, 632 F.3d at 852; see also Halpin, 962 F.2d at 693.  Indeed, in the EOBs, BCBS of South Carolina never stated, for example, that the claims were denied because it determined that the Providers' charges exceeded the usual and customary fees in the State of New Jersey, or that the claims were not properly documented or improperly bundled.  See, e.g., Diagnostic Med. Assocs., M.D., P.C., 157 F. Supp. 2d at 300.  Furthermore, BCBS of South Carolina never referenced the specific provision of the Plan on which the determinations were based, nor did it articulate any internal rules, guidelines or protocols that were relied upon in making the initial adverse determination.  This deficiency is especially important, because Excellus now argues, and reveals, in a certification attached to its motion, that BCBS of South Carolina actually applied the fee schedule in the

19

Horizon plan, i.e., the "Host Plan," to determine the appropriate reimbursement for the instant claims.[11]  See Cobb Decl. at ¶ 5.  This type of information should have been provided to Plaintiff during the adverse benefit determination stage of the administrative process.  While Excellus is not required to divulge all of the calculations utilized to determine the local fees, see Franco, 818 F. Supp. 2d at 822-23; McDonough, 2011 WL 4455994, at *6, it was required to identify, at the very least, what fee schedule was used as the local rates.  Stated differently, BCBS of South Carolina was required to tell Plaintiff, in the EOBs, that it used the Horizon fee schedule, or some other schedule, to evaluate Plaintiff's claims.  Without this relevant information, for example, Plaintiff could not adequately challenge the usual and customary rates in the local geographic region.  See Mirza, 800 F.3d at 136; see also Morningred, 526 Fed. Appx. at 220 ("These regulations ensure that claimants have the ability to 'understand' and 'challenge' an administrator's decision.").  Therefore, it deprived Plaintiff and/or the Providers of the opportunity to submit relevant evidence to support their claims for reimbursement on appeal.  Accordingly, based on these deficiencies, the Court concludes that Excellus failed to comply with 29 U.S.C. § 1133 and 29 C.F.R. § 2560.503-1(g), and as a result, Plaintiff and the Providers were negatively impacted in their ability to have a full and fair review.  See Post, 501 F.3d at 165; see Feeko, 636 Fed. Appx. at 105.

### 2.   **The Appeals Determinations**

Plaintiff next argues that Excellus did not provide adequate notice in connection with the denial of her administrative appeals.  ERISA requires every employee benefit plan to "afford a

---

[11] The Court notes that not all of the information that Excellus has provided in the instant action, and on this motion, is necessarily required to be included in the EOBs, but if included in the EOBs, would have been sufficient, since § 503 and its implementing regulations only require that Excellus satisfy the minimum procedural requirements.

reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim."  29 U.S.C. § 1133.  While § 2560.503–l(g) governs the initial denial correspondence, § 2560.503–1(j) governs the denial of appeals correspondence.  Indeed, if the plan administrator denies the appeal, § 2560.503–1(j) triggers a new round of disclosures in the appeal determination action.  Notification of an adverse benefit determination on review must include in pertinent part:

> (1) The specific reason or reasons for the adverse determination;
>
> (2) Reference to the specific plan provisions on which the benefit determination is based;
>
> (3) A statement that the claimant is entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits.
>
> (4)(i) A statement describing any voluntary appeal procedures offered by the plan and the claimant's right to obtain the information about such procedures described in paragraph (c)(3)(iv) of this section, and a statement of the claimant's right to bring an action under section 502(a) of the Act….

29 C.F.R. § 2560.503-1(j)(1)-(4)(i).  While the Third Circuit has not addressed the purpose of this particular regulation, the Ninth Circuit has explained that the purpose of § 2560.503–1(g) and § 2560.503–1(j) is to provide a claimant with a sufficient explanation of the denial of benefits to ensure meaningful review.  See Mitchell v. CB Richard Ellis Long Term Disability Plan, 611 F.3d 1192, 1199 n.2 (9th Cir. 2010); see Glista v. Unum Life Ins. Co. of Am., 378 F.3d 113, 129 (1st Cir. 2004).  Specifically, "[r]equiring that plan administrators provide a participant with specific reasons for denial enable[s] the claimant to prepare adequately for any further administrative review, as well as appeal to the federal courts."  Mitchell, 611 F.3d at 1199 n.2 (internal quotation marks and citation omitted); see Juliano v. Health Maint. Org. of N.J., Inc., 221 F.3d 279, 287 (2d Cir. 2000).  The Ninth Circuit further explained, "[t]he purpose of ERISA's requirements that plan administrators provide claimants with the specific reasons for denial is undermined 'where plan

administrators have available sufficient information to assert a basis for denial of benefits, but choose to hold that basis in reserve rather than communicate it to the beneficiary.'" <u>Mitchell</u>, 611 F.3d at 1199 n.2 (quoting <u>Glista</u>, 378 F.3d at 129).  Otherwise, a claimant could "be sandbagged by a rationale the plan administrator adduces only after the suit has commenced."  <u>Id.</u> (internal quotation marks and citation omitted).

While the Third Circuit in <u>Miller</u> is silent on whether failure to comply with the notice requirements in 29 C.F.R. § 2560.503-1(j) constitutes a procedural irregularity that can rise to a level of misconduct, the court did broadly state that noncompliance "with § 503 in making an adverse benefit determination is probative of whether the decision to deny benefits was arbitrary and capricious."  <u>Miller</u>, 632 F.3d at 851.  The Third Circuit has also stated that, when a plan administrator does not comply with § 503 of ERISA and its accompanying regulations, the appropriate remedy "is to remand to the plan administrator so the claimant gets the benefit of a full and fair review."  <u>Syed</u>, 214 F.3d at 162.  This is consistent with other circuits' interpretation of the notice requirements under ERISA: when a plan administrator fails to provide an adequate explanation of the grounds of its decision on administrative appeal, the proper remedy is to remand the matter to the administrator for further findings or explanation.  <u>See Caldwell v. Life Ins. Co. of N. Am.</u>, 287 F.3d 1276, 1288 (10th Cir. 2002) ("The remedy when an ERISA administrator fails to make adequate findings or to explain adequately the grounds of her decision is to remand the case to the administrator for further findings or explanation."); <u>Gallo v. Amoco Corp.</u>, 102 F.3d 918, 923 (7th Cir. 1996) (when an administrator does not provide an adequate finding or explanation for its denial, the proper remedy "is to send the case back to the tribunal for further findings or explanation."); <u>see also</u> <u>Dunn v. Reed Grp., Inc.</u>, No. 08-1632, 2009 WL 2848662, at *19 (D.N.J. Sept. 2, 2009) (holding that the plan administrator's failure to explain its reasoning in

the denial of an administrative appeal constituted a procedural irregularity necessitating that the case be remanded for further administrative review).

In the instant matter, the Plan unambiguously states that Wegmans has delegated discretionary authority to Excellus to make administrative appeal determinations, see Pl.'s Ex. R, p. 60, and that Excellus retained BCBS of South Carolina to process all benefit claims appeals. Id. at p. 5-6. Furthermore, the Plan provides that a participant or beneficiary is permitted to receive services from an ONET provider, but it states that all claims will be paid based on usual and customary rates for similar procedures in the same geographic region. Id. at p. 4. Importantly, the Plan cautions that the usual and customary rates are likely to be lower than the amount the ONET provider has billed. Id. Indeed, when a participant or beneficiary chooses to go to an ONET provider, "the Plan pays 50 percent of the covered expenses, unless otherwise stated[, and] [y]ou are responsible for the remaining 50 percent." Id. at p. 15.

Like the initial adverse benefits determination contained in the EOBs, Excellus and BCBS of South Carolina failed to comply with § 503 and its accompanying regulations, since BCBS of South Carolina did not provide sufficient explanation of the grounds for denial of each appeal, thereby depriving Plaintiff of a meaningful opportunity to prepare for her subsequent administrative appeals, as well as the appeal to this Court. After BCBS of South Carolina determined that Plaintiff and the Providers were entitled to less monies than the amount billed, the Providers filed the first appeal in September 2013. See Pl.'s Ex. L. The Providers challenged the determination of the usual and customary rates, reasoning that Dr. Cohen's rates were comparable to the prevailing rates in central New Jersey. Id. In support of that position on appeal, the Providers attached a letter setting forth what they believed to be the usual and customary rates for each code. Id. Nevertheless, in November 2013, BCBS of South Carolina sent Plaintiff a single-

page letter denying the appeal.  Pl.'s Ex. M.  In pertinent part, that letter stated: "After careful review, we determined that this claim was processed correctly.  According to the claims area, the payment amount on the claim matches the amount sent over to us from your local.  If there is a pricing question, it should addressed [sic] within your contact with the local."  Id.  In addition, BCBS of South Carolina stated, "No further action is required."  Id.

Based on that response, it is clear that, other than a conclusory statement that the claims were "processed correctly" based on the information provided from the "local," BCBS of South Carolina does not articulate a specific reason for the denial of the appeal, nor does it reference the specific plan provisions on which the benefit determination is based.  In addition, unlike the EOBs, which state that Plaintiff was entitled to appeal that decision and request copies of the relevant information free of charge, such notifications are glaringly absent from the single-page denial of appeal letter.  To the contrary, the letter specifically states that "[n]o further action is required," which could lead a reasonable person to believe that subsequent appeals are not necessary or even permitted.  Because BCBS of South Carolina failed to provide an adequate explanation of the grounds of its decision on appeal, the purpose of 29 C.F.R. § 2560.503-1(j) was frustrated.

Furthermore, the lack of an explanation in the first denial letter prejudiced the ability of Plaintiff and the Providers to pursue meaningful review in connection with their subsequent appeals.[12]  See Juliano, 221 F.3d at 287; see Mitchell, 611 F.3d at 1199 n.2.  This is evidenced by the fact that the Providers essentially resubmitted their initial appeal on March 18, 2014, stating that "[w]e still do not believe the claim was processed correctly."  Id. at Ex. N-O.  The Providers

---

[12] The Court notes that the parties have not agreed about the sequence of events on administrative appeal.  While it is unclear whether Plaintiff and the Providers filed an appeal in December 2013, it is undisputed that Excellus or BCBS of South Carolina did not send a denial of appeal letter with respect to that appeal.

continued, "We are aware that reimbursement rates are typically adjusted based on the usual and customary treatment charges for that specialty and the geographical region[, but] [y]ou do not divulge the source that you used to arrive at your claim determination."  Id.  Similar to their first appeal, the Providers again attached sample EOBs and portions of the fee schedule to support their position that Excellus underpaid the claims for medical care.  Id.

On April 3, 2014, BCBS of South Carolina responded to the appeal.  D'Ambrosio Decl., Ex. E.  In another single-page letter, BCBS of South Carolina stated that it considered: (i) "[l]etter from the member;" (ii) [r]eview of the relevant plan provision;" and (iii) "[r]eview of all documentation received."  Id.  Despite stating that it reviewed all of the relevant provisions of the Plan, BCBS of South Carolina did not state what provisions it considered to be relevant, nor did it address the contents of the Providers' letter and documentation.  Instead, in a conclusory fashion, BCBS of South Carolina declared that "[w]e processed the claim(s) correctly according to your out-of-network, inpatient professional benefit," and instructed the Providers that "[n]o action is necessary unless you have additional questions."  Id.  The second denial of appeal letter suffers from the same deficiencies as the first denial of appeal letter.  BCBS of South Carolina merely reiterated its conclusory determination that the claims were processed correctly, and while BCBS of South Carolina stated that the claims were processed "according to your out-of-network, inpatient professional benefit," it did not provide Plaintiff or the Providers with the respective provision of the Plan.   Accordingly, this letter plainly does not satisfy the notice requirements under 29 C.F.R. § 2560.503–1(j).

Perplexingly, and without explanation, Horizon sent Plaintiff and the Providers two letters, which purported to deny the March 18, 2014 appeal, even though BCBS of South Carolina previously denied that appeal on April 3, 2013.  See Pl.'s Exs. P and Q.  Similar to the prior denial

letters, these letters provide scant explanation as to the specific reason for denial, nor do those letters reference any specific provision of the Plan on which the denial was based.  For example, in one of the letters, Horizon stated that Plaintiff was "[i]neligible for appeal," but it nonetheless concluded that the claim "was processed correctly."  Id. at P.  In the other letter, Horizon once again concluded that Plaintiff was "[i]neligible for Appeal," and determined that the "[d]enial stands.  The claim for a total charge of $159,111.00 was processed correctly."  Id. at Q.  Assuming that Horizon was authorized to, and was making its own determinations, these letters were woefully deficient.

The final administrative appeal was filed on August 19, 2014.  See Baker Decl., Ex. 1 at p. 96-99.  In that appeal, the Providers stated "that this our third and final appeal and that we have exhausted all administrative remedies regarding this claim."  Id. at p. 96.  The Providers specifically stated that "[t]he claims were processed incorrectly," and attached "[s]ample EOB's paid by both you and other payers for the same procedures and a UCR reasonable and customary scale…."  Id.  On August 29, 2014, BCBS of South Carolina denied the appeal because "[w]e processed the claim(s) correctly according to your out-of-network, inpatient physician services benefit," and it reiterated that "[n]o action is necessary unless you have additional questions."  D'Ambrosio Decl., Ex. F.  This denial is no different than prior denials.  Indeed, throughout the appeals process, it is clear that BCBS of South Carolina continually provided Plaintiff and the Providers with little to no information, aside from conclusory statements that the claims were processed correctly.  Furthermore, instead of providing notice of the administrative appeals process, BCBS of South Carolina appeared to forestall future appeals by stating that no further action was needed.

In this litigation, Excellus now asserts that it is considered the "Home Plan," and that Horizon is the "Host Plan," since Plaintiff received medical services from Dr. Cohen in the State of New Jersey.[13]  See Cobb Decl. ¶ 5; see also D'Ambrosio Decl. ¶ 17.  In denying the appeals, Excellus posits, here, that BCBS of South Carolina utilized the pricing methodologies in the Horizon plan, i.e., the "Host Plan," to calculate reimbursement for the instant claims.  See Cobb Decl. at ¶ 5.  Specifically, Kelly Cobb, an employee at BCBS of South Carolina, explained in a certification that "[t]he data transferred by Horizon to BCBS of South Carolina indicated the 'Host Plan' pricing for out-of-network services was 150% of CMS."  Id. at ¶ 9.  Although Plaintiff and the Providers filed several administrative appeals, BCBS of South Carolina never explained in its denial letters that the instant claims were calculated by using Horizon's pricing methodologies, nor did BCBS of South Carolina cite the relevant provision of the Plan permitting, or even explaining, such a process.  To the contrary, BCBS of South Carolina repeatedly told Plaintiff and the Providers that the claims were processed correctly, without providing adequate explanation for

---

[13] Excellus argues that this Court should adopt the reasoning in Montvale Surgical Ctr. v. Horizon Blue Cross Blue Shield of N.J., No. 12-2378, 2013 WL 4501475 (D.N.J. Aug. 21, 2013).  In Montvale, the claimant underwent a medical procedure, and her ONET medical provider submitted a claim for reimbursement, but the plan administrator only paid a fraction of the bills charged.  Id. at *1-2. The claimant then appealed, but the plan administrator upheld its decision.  Id.  While the facts underlying this matter are similar to those in Montvale, that decision is distinguishable because the court in Montvale was not confronted with the argument that the plan administrator failed to comply with § 503 and its accompanying regulations.  Rather, the court was simply tasked with interpreting the language of the plan and the merits of the plan administrator's decisions.  See id. at *3-4.  After reviewing the relevant provisions of the plan, the court concluded that the plan administrator was permitted to determine allowance for ONET providers based on research complied by an outside consultant, and that ONET providers were to be reimbursed at a rate of 70 percent of the covered charges.  Id. at *10-11.  Because the actions of the plan administrator were consistent with the plan, the court concluded that the plan administrator did not act arbitrarily or capriciously in making a determination about the appropriate reimbursements to the ONET provider.  Id. at *11.  Here, the appeals and denial letters did not explicate the basis for the administrator's calculations, and thus, review of the determinations is not feasible.

that conclusion.  The reason Excellus and BCBS of South Carolina are required to provide Plaintiff with specific reasons for the denial is to allow Plaintiff, as well as the Providers, "to prepare adequately for any further administrative review, as well as appeal to the federal courts." Mitchell, 611 F.3d at 1199 n.2.  Like the Ninth Circuit warned, it appears that Plaintiff and the Providers have effectively been "sandbagged by a rationale [Excellus] adduces only after the suit has commenced," even though Excellus and BCBS had sufficient information to provide a basis for denial during the administrative appeals process.  Id.  Excellus' belated explanations in this litigation are not a substitute for the administrator's failures to provide adequate reasons for its denials in the appeal process.

Accordingly, the Court finds that Excellus' failure to adequately explain the grounds for denying the administrative appeals in this matter was violative of 29 U.S.C. § 1133 and its accompanying regulations, 29 C.F.R. § 2560.503-1(j).  Although courts retain considerable discretion in selecting a remedy, based on the procedural irregularities contained in the denial of appeal letters, this Court finds that the appropriate remedy "is to remand to the plan administrator so the claimant gets the benefit of a full and fair review." Syed, 214 F.3d at 162.  Because Excellus failed to meet the minimum procedural requirements under § 503 of ERISA, Plaintiff has been deprived of a full and fair opportunity to adequately challenge the determinations made during the administrative proceeding.  As a result, this Court has not been presented with a full record. Indeed, this Court has effectively been asked by the parties to act as the plan administrator in the first instance, tasked with weighing evidence in order to determine the merits of the reimbursement claims.  However, that is not the role of this Court.  See Viera v. Life Ins. Co. of N. Am., 642 F.3d 407, 413 (3d Cir. 2011) (stating that "the role of the court is to determine whether the administrator ... made a correct decision.") (internal quotation marks and citation omitted) (alteration in original).

28

Nevertheless, if the same outcome is reached on remand, and Plaintiff seeks judicial review again, this Court will have the benefit of a full record to make a determination whether Excellus' decision is entitled to deference.

## IV.     CONCLUSION

Based on the foregoing, Excellus' motion for summary judgment is **DENIED**, and Plaintiff's motion for summary judgment is **GRANTED** to the extent that the Court remands this case for further administrative review.

DATED: February 14, 2017                    /s/ Freda L. Wolfson
                                            The Honorable Freda L. Wolfson
                                            United States District Judge